**HARRINGTON & CALDWELL, P.C.**
**By:** SALLY J. CALDWELL, ESQUIRE
**IDENTIFICATION NUMBER:** 005092000
**ONE PENN CENTER, SUITE 1055**
**1617 JOHN F. KENNEDY BOULEVARD**
**PHILADELPHIA, PA 19103**
**(215) 751-1135**
**(215) 751-1147 (Fax)**
office@harringtoncaldwellpc.com

**ATTORNEY FOR PLAINTIFFS**

| | |
|---|---|
| JOSEPH J. HAGE and VANESSA HAGE, h/w<br>415 Millstone River Road<br>Belle Meade, NJ  08502<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY<br>100 State Farm Place<br>Ballston Spa, NY  12020 | IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY (TRENTON)<br><br>DOCKET NO:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT IN CIVIL ACTION**
**COUNT ONE**
**(Breach of Contract)**

1. Plaintiffs are adult married individuals and residents and citizens of the State of New Jersey where at all relevant times hereto they resided and occupied the residence premises located at 415 Millstone River Road, Belle Meade, Montgomery Township, Somerset County, New Jersey.

2. Defendant, State Farm Fire and Casualty Insurance Company is an Illinois insurance company principally located in Illinois and defendant maintains offices at the above captioned address and is engaged in the business of insurance in New Jersey.

1

3. Jurisdiction of this Court is based on diversity, 28 U.S.C. Section 1332, because the parties are residents and citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

4. At all times relevant hereto plaintiffs' aforedescribed property at 415 Millstone River Road was insured by a policy of all physical risk, replacement cost homeowners insurance issued to plaintiffs by defendant in exchange for valuable consideration.

5. On or about June 28, 2016 fire of accidental origin along with smoke, water, firefighting activity and remediation activity rendered plaintiffs' residence premises a total actual and/or the constructive loss; and to restore the dwelling to preloss condition it must be demolished and rebuilt.

6. Plaintiffs' personal property suffered severe loss and damage of which plaintiffs' claim is substantially resolved except for approximately $40,000.00 of contents items over which the parties dispute the scope and cost of repair or replacement; and plaintiffs expressly claim and reserve herein their right to recover any and all depreciation held back by defendant as a result of any advance building or contents payments to plaintiffs of the undisputed amount of damage.

7. Plaintiffs' additional living expenses are ongoing and will continue into the foreseeable future until plaintiffs' dwelling is restored to preloss condition and thus safe for habitation by the plaintiffs.

8. As a result of the fire, smoke and ensuing water damage plaintiffs' dwelling is a total loss and no amount of remediation, repair or restoration to the structure will render it safely habitable by plaintiff, Vanessa Hage, whose medical conditions require

her to live in a structure free of harmful mold, combustion byproducts including smoke and agents used to fight the fire and remediate the smoke and water damage.

9. Before the fire on June 28, 2016 plaintiffs lived in a structure free and clear of harmful mold, chemicals, toxins and combustion byproducts including smoke which could physically harm Mrs. Hage, and plaintiffs know this because they lived at the subject dwelling without any adverse health effects to Mrs. Hage caused by the dwelling or its contents since May 5, 2008, the date they moved into the dwelling; and, before the fire the quality of the construction and building materials of their dwelling was without harmful mold, chemicals, toxins, combustion byproducts including smoke and Mrs. Hage's use of the property was without any health incidents attributable to same.

10. Plaintiffs immediately notified defendant of the fire on June 28, 2016 and complied with all conditions precedent to receipt of full indemnity under their policy.

11. Pursuant to the terms of the replacement cost (A1) policy plaintiffs reasonably except to be indemnified for the cost to repair or replace physical damage or destruction of tangible property resulting from accidental direct physical loss.

12. The policy states that State Farm will pay the cost to repair or replace the damaged dwelling with similar construction and for the same use at the plaintiffs' premises.

13. Despite demand for full and complete indemnity pursuant to the all physical risk replacement cost homeowners policy which plaintiffs reasonably expect, defendant has refused to tender to plaintiffs a sufficient amount to restore the dwelling to the condition it was in before the loss which was safely habitable by plaintiffs.

14. Plaintiffs complied with all conditions precedent to full recovery under the policy to the best of their ability under the circumstances including providing to defendant medical and environmental proofs demonstrating that repair of the existing structure will not make it safely habitable by Mrs. Hage and that instead the dwelling must be demolished and rebuilt in order to be restored to preloss condition and despite submission of substantiatial proofs that plaintiffs' dwelling must be demolished and rebuilt in order to be safely habitable and restored to preloss condition, defendant has refused, and as stated above, has indemnified plaintiffs an insufficient amount to repair what is left of the burnt dwelling.

15. Plaintiffs demanded full and complete indemnity as they reasonably expect under the terms of the insurance policy and defendant has refused in breach of the insurance contract.

WHEREFORE, plaintiffs pray for a money judgment against defendant for a sum in excess of $75,000.00 for compensatory damages, interest and costs.

## COUNT TWO
### (Bad Faith)

16. Plaintiffs incorporate paragraphs one (1) through fifteen (15) above as if set forth herein at length.

17. Plaintiffs provided to defendant the medical opinions of Mrs. Hage's treating physicians who opined that the fire damaged structure cannot be rendered safely habitable by Mrs. Hage due to harmful mold, chemicals, toxins, combustion byproducts including smoke in and throughout the dwelling which all resulted from the fire, firefighting activities and reasonable attempts to remediate the structure.

18. Plaintiff, Mrs. Hage, gave defendant authorizations to access her medical history and despite obtaining clear and unequivocal proof that Mrs. Hage suffers from debilitating medical conditions which will be made worse and threaten her health and even her life if she is compelled to live in the structure as repaired per defendant's estimate, defendant unreasonably persists in its contention that the remains of the dwelling can be repaired despite the inability of defendant's construction consultant to guarantee that repairs to the structure will make it safely habitable by Mrs. Hage.

19. It is not reasonably debatable that plaintiff Mrs. Hage suffers medical conditions that are worsened to the point of being life threatening if she is exposed to the various harmful substances introduced into the structure as a result of fire, smoke, water, firefighting activities and remediation efforts undertaken to abate the effects of the smoke and water.

20. It is not reasonably debatable that no amount of repair to the structure will render it safely habitable by Mrs. Hage.

21. No expert for State Farm has or can guarantee that repair of the existing structure as contemplated by State Farm's repair estimate will render it safely habitable by Mrs. Hage and despite same defendant willfully refuses to indemnify plaintiffs for the cost to restore the dwelling to preloss condition.

22. In addition to the unreasonable and not fairly debatable position taken by State Farm regarding repairs to the structure defendant has also engaged in unreasonable conduct by limiting plaintiffs' additional living expense coverage for an additional three (3) months until the end of September 2017 despite plaintiffs' coverage for same which extends for two years without limit and despite State Farm's

construction consultant's opinion that it will take six (6) months to complete the dwelling repairs in his estimate.

23. State Farm acted unreasonably by engaging in the following conduct in responding to plaintiffs' notice of loss:

    a. Delay in providing emergency services to the plaintiffs on the date of the fire and failure to provide any emergency services on that date despite receiving immediate notice of the fire by plaintiffs;

    b. Dispatching an emergency service "preferred vendor" to plaintiffs' dwelling on June 29, 2016 who attempted to disrupt the fire scene in order to remove plaintiffs' property from the dwelling before the cause and origin investigation was completed; and

    c. Dispatching an emergency service "preferred vendor" who was unable to provide any emergency services over the holiday weekend which followed the date of loss.

24. State Farm further acted unreasonably by engaging in the following initial delays: discouraging plaintiffs from hiring a public adjuster warning plaintiffs that to do so would cause delay and after plaintiffs did so defendant engaged in unreasonable delays in the handling of the claim fulfilling its prophecy to plaintiffs including without limitation:

    a. Delay in approving alternative living arrangements for plaintiffs whose dwelling was rendered uninhabitable by the fire;

    b. Delay in conducting its own evaluation of the mold and chemicals in the structure; and

    c. Delay in communicating with plaintiffs' public adjuster's representative including willfully refusing, with exception on July 8, 2016 (when State Farm's adjuster sent 3 emails to plaintiffs' public adjuster showing that defendant did have the capability to communicate electronically with said public adjuster), to engage in electronic communication with said public adjuster except for auto replies acknowledging receipt of the public adjuster's communications, addressing letters to the public adjuster and mailing those letters to the plaintiffs at their burnt out residence where State Farm knew plaintiffs did not reside as State Farm was paying for

plaintiffs to live elsewhere all of which unreasonable communication practices caused continual delay in moving the claim toward final resolution.

25. State Farm's unreasonable position that plaintiffs' structure can be restored to preloss condition by repair as opposed to demolishing and rebuilding it is not reasonably debatable under the facts of this loss and State Farm's other conduct including the delays described above which could have been avoided constitutes bad faith conduct under New Jersey law for which plaintiffs seek compensatory and punitive damages.

WHEREFORE, plaintiffs pray for a money judgment against defendant for a sum in excess of $75,000.00 for damages, interest and costs.

RESPECTFULLY SUBMITTED,
Harrington & Caldwell, P.C.
Attorneys for Plaintiffs

By: _____
SALLY J. CALDWELL, ESQUIRE